# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY W., <br><br> Petitioner, <br><br> vs. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-00436-REB <br><br> **MEMORANDUM DECISION AND ORDER** <br><br> **(Dkt. 1 & 20)** |

Pending is Petitioner Jeremy W.'s Petition for Review (Dkt. 1), and an accompanying Motion for Summary Judgment (Dkt. 20) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On May 10, 2016, Petitioner protectively filed an application for child's insurance benefits based on disability, as well as an application for supplemental security income ("SSI"). (AR 13.) In both these claims, Petitioner alleged disability beginning on December 20, 2013. (*Id.*) His claims were denied initially on August 4, 2016 and upon reconsideration on February 22, 2017. (*Id.*) Petitioner timely filed a written request for hearing before an Administrative Law

**MEMORANDUM DECISION AND ORDER - 1**

Judge ("ALJ") on April 3, 2017. (*Id.*) Petitioner testified at a video hearing held on November 6, 2018 in Pocatello Idaho. in Boise, Idaho. (*Id.*) ALJ David Willis presided at the hearing and an impartial vocational expert Kent Granat also appeared and testified at the hearing. (*Id.*)

On January 14, 2019 ALJ Willis issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 25.) Petitioner timely requested review from the Appeals Council January 25, 2019. (AR 5). On September 27, 2019, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1-3).

Having exhausted his administrative remedies, Petitioner filed this case, raising several points of error. First, he argues that the ALJ erred in electing to give little weight to the opinions of examining psychologist Dr. Nels Sather, who saw Petitioner twice and determined that he had "marked" limitations in two critical areas of mental functioning under Listing 12.11, which deals with certain neurodevelopmental disorders. Second, Petitioner argues that Dr. Sather's opinions and IQ scores showing that he was at least two standard deviations below the mean in certain areas of intellectual functioning establishes that he meets the requirements of Listing 12.11. Third, Petitioner argues that the ALJ failed to meet his burden at step five to establish that there are jobs in the national economy that he would be capable of performing. Fourth and finally, Petitioner contends that his own testimony regarding his functional limitations should be credited as true, and the Court should enter an order that he is disabled rather than remanding the case to the ALJ for further proceedings.

## II. STANDARD OF REVIEW

**MEMORANDUM DECISION AND ORDER - 2**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court reviews the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable

weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step asks whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity since December 20, 2013, the alleged onset date of his disability. (AR 15.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: congenital heart disease, curvature of the spine, borderline intellectual functioning, and a learning disorder. AR 15.

The third step calls on the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 15-17.

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ found that physically, Petitioner's physical limitations (i.e. the congenital heart defect and curvature of the spine) meant he had the residual functional capacity to perform only light work as defined in 20 CFR 4.4.1567.(b) and 416.967(b), with certain other limitations not pertinent to this appeal. In terms of cognitive limitations, the ALJ determined that Petitioner had the residual functional capacity to perform simple, routine, and repetitive tasks, but not at a production rate (i.e. assembly line) pace. The ALJ further found that Petitioner would be able to make and perform simple work-related decisions, and that he would be off task about ten percent of an eight-hour workday. AR 18.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do

other work and meets the duration requirement, he is disabled. Here, the ALJ found that as of the date of his decision, Petitioner could work full time as an electrode cleaner (729.687-014); garment folder (789.687- 066); and food sorter (529.687- 186). AR 24-25. The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*) Based on these findings, the ALJ concluded that Claimant was not disabled.

B.      Analysis

Neither party assigns error to the ALJ's conclusion that Petitioner's physical defects—i.e. his congenital heart defect and/or curvature of the spine—limited him to an RFC allowing only for certain kinds of light work. Therefore, in this appeal, the Court only considers the ALJ's assessment of Petitioner's mental and intellectual functioning as it related to his ability to find work within the already somewhat limited field of light work available to him by reason of his physical limitations.

**1.  The ALJ Did Not Err by Electing to Give Little Weight to Dr. Sather's Opinions.**

Petitioner challenges the ALJ's decision to give little weight to the opinions of Dr. Nels Sather, a clinical psychologist who examined Petitioner in 2015 and then again in 2017. In his 2017 report, Dr. Sather opined that Plaintiff had "marked" limitations in: 1) understanding, remembering, and carrying out complex instructions, sustaining concentration, and making judgments on complex work decisions; and 2) responding appropriately to workplace change. AR 349. If accepted as true, these limitations would meet the criteria for listing 12.11, relating to disabilities arising from certain neurodevelopmental disorders.

The Court disagrees that the ALJ committed legal error in his decision to give little weight to the opinions of Dr. Sather. An ALJ may reject the contradicted opinion of an examining doctor "by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Moreover, the ALJ must resolve conflicts in evidence, including conflicting opinions of medical providers. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, (1971).

Here, in addition to Dr. Sather's report, the record includes other professionals who offered opinions regarding Plaintiff's functional limitations. One is a 2018 report prepared by Brooke Sjostrom, a social worker, which was prepared under the supervision of Thomas Genthe, Ph.D., a psychologist. AR 409-17. Ms. Sjostrom examined Petitioner at the request of the Idaho State Division of Vocal Rehabilitation, to clarify his "cognitive abilities, mental health status, mental status, and adaptive level of functioning." AR 409. In addition to a diagnostic interview, she administered tests, including the Wechsler Adult Intelligence Scale – IV (WAIS-IV), which revealed that Petitioner's full-scale IQ was 80, in the low average range. AR 416. Other tests indicated that Petitioner's working memory was borderline, his perceptual reasoning and processing speed were low average, and his verbal comprehension was average. *Id.* Nonverbal skills were in the low average range and his ability to sustain attention and concentration was "borderline." *Id.* Testing also indicated that Petitioner had limited math skills, such that Ms. Sjostrom concluded he could not work in any position requiring even simple math skills, such as cashier work. *Id.*

Based on this combination of skills and limitations, Dr. Genthe and Ms. Sjostrom concluded that Petitioner had the intellectual capacity to function in entry-level jobs requiring

only simple, repetitive tasks, so long as those jobs did not involve math. AR 416-17. The ALJ adopted these findings of Ms. Sjostrom and Dr. Genthe, in arriving at the residual functional capacity for Petitioner and stated that he was giving these findings "great weight." AR 20.

Opinions from the two consulting physicians were generally in accord with the Sjostrom/Genthe opinion. Both consulting reports specifically addressed Dr. Sather's opinions and concluded that those opinions exaggerated the severity of Petitioner's functional limitations. The ALJ gave these consulting physician opinions "great weight" because he concluded they were "more consistent with the record as a whole." AR 23. The ALJ also rejected Dr. Sather's opinion that Petitioner was "seriously impaired" in his ability to perform work related activities in the areas of remembering, understanding, persistence, sustaining concentration, and adapting to workplace change, because the ALJ found such an opinion to be inconsistent with the fact that Petitioner completed high school with the assistance of an independent educational plan. AR 23, 63-66, 68-70.

As evidenced from the foregoing discussion, there was substantial evidence in support of the ALJ's opinion. The opinion of Dr. Genthe and Ms. Sjostrom on its own, based upon Ms. Sjostrom's independent examination of Petitioner, constitutes substantial evidence supporting the ALJ's decision. *See, eg. Tonapetyan v. Halter,* F.3d at 242 F.3d 1144 (9th Cir. 2004). And even though they were neither examining nor treating physicians, the two opinions from state consulting physicians bolsters the ALJ's conclusion. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is

consistent with other independent evidence in the record." *Tonapetyan,* at 1149. *See also Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

Finally, the ALJ also relied heavily, both at the hearing and in his written opinion, on the fact that Petitioner had successfully completed high school. AR 23. At the hearing, the ALJ engaged in an extensive discussion of Petitioner's high school record and noted that while he had failed some classes, he had passed high school overall. The ALJ stated:

> The point I'm making . . . . is that although he does have lower grades and lower skills, it's not quite as dramatic as someone that's truly required special education. It's . . . indicative of an 80 full scale IQ, but that's not indicative necessarily of being unable to do simple, routine, repetitive tasks.

AR 68. It was not illogical for the ALJ to conclude that someone capable of completing high school, albeit with educational accommodations and comparatively lower grades, would be capable of performing routine entry level jobs.

The ALJ's detailed assessment of Petitioner's high school record and its implications for his employability, together with the divergent opinion evidence discussed above, all constitutes substantial evidence in support of his decision to give Dr. Sather's opinion minimal weight.

### 2. Whether Claimant Met the Requirements of Listing 12.11

Next, the Court addresses Petitioner's argument that he met the requirements for listing 12.11, which addresses how certain neurodevelopmental disorders may create a listing level disability. The crux of the parties' disagreement is over whether Criteria B of this listing was met. Petitioner argues almost entirely from Dr. Sather's opinion that he has "marked" deficits in the domains of 1) understanding, remembering, and carrying out complex instructions, sustaining concentration and making judgment on complex work decisions; and 2) responding appropriately

to workplace change. AR 349. While this opinion, if credited, would place Petitioner within the umbrella of Listing 12.11, the record includes only Dr. Sather's opinion that Petitioner has marked limitations in both of these domains. The ALJ decided that Dr. Sather's opinion was only entitled to minimal weight. Hence, Petitioner's argument that he met the requirements of the listings fails.

The inquiry continues, however, because Petitioner also argues that his low cognitive test scores alone are enough to establish a disability under the relevant listing. Petitioner draws upon a provision of the Social Security Programs Operations Manual which discusses when proof of disabling levels of cognitive impairment can be supported by standardized testing. The relevant portion states:

> "we will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. 'Marked' limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

POMS DI 25225.020; https://secure.ssa.gov/poms.nsf/lnx/0425225020 (Accessed May 28, 2021). The same language is found in the regulations. *See* 20 C.F.R. § 419.926a(e)(2)(i).

However, the fact that Petitioner's IQ scores are at least two standard deviations below the mean does not necessarily establish that he meets listing 12.11. To begin, the rule Petitioner cites may not have any applicability to the case at bar. Although the parties, in their briefing, touch upon the issue of which regulations apply, they do not do so in a way that identifies a clear connection or lack of connection between the rule and this case. The Commissioner points out that 20 C.F.R. § 419.926a(e)(2)(i) (the regulation that parallels the portion of the Programs

**MEMORANDUM DECISION AND ORDER - 11**

Operation Manual Cited by Petitioner) deals only with functional equivalence for children, not for adults, and argues that it is therefore inapplicable to Petitioner's claim. Respondent's Brief, Dkt. 24 at p. 9. Petitioner, for his part, points out that part of his claim consists of an application for child's insurance benefits. AR 13, Petitioner's Reply Brief, Dkt. 25 at p 5. The Commissioner, however, also points out that Petitioner's asserted date of disability onset was December 20, 2013 (his eighteenth birthday), the implication presumably being that the rules for adults, not the rules for children, apply to his case.

Ordinarily, this lack of clarity over which set of regulations applies to which claims would be a matter upon which the Court might be inclined to ask for further briefing.[1] However, the Court need not do so because despite the disagreement about which set of regulations apply here, both sets of regulations provide that a single piece of evidence, viewed in isolation, cannot definitively establish a disability. For instance, the portion of Listing 12.00 (for adults) makes clear that limitations in mental functioning are considered on a holistic basis:

> Limitation of an area of mental functioning reflects the overall degree to which your mental disorder interferes with that area. The degree of limitation is how we document our assessment of your limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis. It does not necessarily reflect a specific type or number of activities, including activities of daily living, that you have difficulty doing. *In addition, no single piece of information (including test results) can establish the degree of limitation of an area of mental functioning.*

Listing 12.00F, https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (accessed May 28, 2021). (emphasis added). Other portions of this listing allow the ALJ to consider a wide variety of evidence in determining the functional limitations created by a

---

[1] Aside from the issue regarding how to treat IQ scores, Petitioner's brief cites to the same regulations and case law as would govern an ordinary SSI or SSDI case. The ALJ's decision does the same.

**MEMORANDUM DECISION AND ORDER - 12**

mental impairment, besides just psychological or cognitive testing, to include specifically, evidence obtained from educational settings, and observations obtained during therapy, counseling, or psychological examinations. *Id.* at 12.00C(2)(j) and 12.00C(4). The same thing is true of the regulations upon which Petitioner relies. That regulation unequivocally states that the ALJ "will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). It further states that, with respect to low IQ scores, the Commissioner will only find marked or extreme limitations if "your day-to-day functioning in domain-related activities is consistent with that score." § 416.926a(e)(2)(iii), (3)(iii). In other words, contrary to Petitioner's argument, it appears that the Commissioner simply does not consider IQ scores in isolation when determining disability, whether a claimant has applied for benefits as a child or as an adult.

For these reasons, the ALJ's decision to give great weight to Petitioner's educational history and to opinions of Dr. Genthe and Ms. Sjostrom, as opposed to looking solely at his IQ scores, was perfectly consistent with the Commissioner's regulations and supported by substantial evidence.

### 3. The ALJ Met His Burden at Step Five.

Finally, the Court considers Petitioner's argument that the ALJ failed to meet his burden at step five of proving that there are jobs in the national economy that someone with Plaintiff's residual functional capacity could perform. Again, the ALJ determined that Petitioner could work as an electrode cleaner, a garment folder, or as a food sorter, and that these jobs existed in significant numbers both statewide and nationally.

The crux of Petitioner's argument is that the ALJ failed to resolve a conflict between the specific job descriptions for these positions and the broader discussions of the maximum skills that may be required for such occupations, as set forth in the Dictionary of Occupational Titles ("DOT"). Specifically, the sections of the DOT cited by Petitioner indicate that occupations like electrode cleaners, food sorters, and garment folders may require "Level 1" mathematical ability, which is a shorthand way of describing an individual able to "add and subtract two-digit numbers, multiply and divide 10s and 100s by 2, 3, 4, and 5, and perform basic arithmetic operations with coins as part of a dollar," and perform basic operations with standard units of measurement. Exhibit to Plaintiff's Brief, Dkt. 20, p. 42. However, the more specific job descriptions used by the Vocational Expert ("VE") and the ALJ make no mention that math skills are necessary for the positions determined to be within Petitioner's residual functional capacity. Rather, as common sense would suggest, the job descriptions for the positions of electrode cleaner, garment folder, and food sorter each focus on a discrete number of simple, repetitive manual tasks. Respondent's Brief at p. 11; See also DOT No. 729.687-014, 1991 WL 679734 (electrode cleanser); DOT No. 789.687-066, 1991 WL 681266 (garment folder); DOT No. 529.687-186, 1991 WL 674781 (food sorter). At the hearing, the VE concluded that Petitioner was capable of performing these jobs, which he described as being "as simple as any that exist." AR 73-78. Nor is it immediately obvious to this Court that even rudimentary math skills would be required to adequately perform these jobs.

Several years ago, in *Gutierrez v. Colvin,* the Ninth Circuit was faced with a case which involved a similar disconnect between the generalized DOT descriptions of the educational levels suitable for certain types of occupations and the core requirements of a particular job.

**MEMORANDUM DECISION AND ORDER - 14**

*Gutierrez,* 844 F.3d 804 (9th Cir. 2016). There, the ALJ ruled that a claimant had a residual functional capacity to work as a cashier and was therefore not disabled. The claimant appealed the ALJ's decision, arguing in part that the generalized DOT descriptions indicated that some cashiers might be required to "frequently" engage in overhead reaching, something the claimant could not do. In affirming the ALJ's finding of no disability, the court held:

> It's important to keep in mind that the Dictionary refers to "occupations," not to specific jobs. "Occupation" is a broad term that includes "the collective description" of "numerous jobs" and lists "maximum requirements" of the jobs as "generally performed." SSR 00-4P, 2000 WL 1898704, at *2–3. Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of "maximum requirements" for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.
>
> . . .
>
> For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the Dictionary's definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

*Id.* at 807-809.

Based on the holding in *Gutierrez,* the Court agrees with the Commissioner that, at most, the ALJ committed harmless error by failing to clarify whether the jobs the VE identified required math skills. None of the three occupations identified by the VE strikes the Court as needing even very rudimentary math skills. Someone employed as an electrode cleaner, garment worker, or food sorter might occasionally encounter math problems, but mathematical skills are not mentioned in the core requirements of the job descriptions. Nor has Petitioner made any

argument that the jobs regularly require math skills. Thus, any conflict is not "obvious" and the ALJ therefore did not err in failing to reconcile the alleged conflict at the hearing.

## CONCLUSION

For all the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence and free of reversible error. Because the Court so finds, it need not reach Petitioner's argument that the Court should credit as true Petitioner's testimony about his own functional limitations, since such considerations only come into play if the Court must decide whether to enter an immediate order finding that a claimant is disabled as opposed to remanding for further proceedings. These considerations do not come into play where, as here, the Court affirms the ALJ's decisions.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the accompanying Motion for Summary Judgment (Dkts. 1 & 20) are **DENIED,** and the decision of the Commissioner is **AFFIRMED.**



DATED: June 4, 2021

_____
Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**